## Case No. 16,985.
### VOGLE v. LATHROP.

[4 N. B. R. 439 (Quarto, 146); 1 4 Brewst. 253; 3 Pittsb. R. 268; 18 Pittsb. Leg. J. 106; 2 Leg. Gaz. 390.]

Circuit Court, W. D. Pennsylvania. Nov. 14, 1870.

BANKRUPTCY — FRAUDULENT PREFERENCES — CONFESSION OF JUDGMENT—JUDGMENT NOTES.

1. When a debtor confessed a judgment within four months previous to the filing of the petition against him. being at the time insolvent, and the creditor having reason to believe him so, though there was. as a consideration, a pre-existing debt: *Held*, to be in fraud of the bankrupt act [of 1867 (14 Stat. 517)], being in the category of acts prohibited in section 35.

[Cited in Haskell v. Ingalls, Case No. 6,193. Re Lord, Id. 8,503; Hall v. Wager, Id. 5,-951.]

[Cited in Mathews v. Riggs (Me.) 13 Atl. 49.]

2. The fact that the judgment was taken as a collateral for the security, aggregate of several other judgments. regular and valid, and to facilitate their collection, does not affect their validity.

3. When one constituted attorney for the collection of a debt procured from the debtor a judgment note for the amount in his own name, and entered it. knowing that the debtor was insolvent, there being a clear intent to give a preference within the meaning of the act, though the fact of insolvency was not directly known to the real creditors. such knowledge is imputable to them and the judgment is invalid.

4. But where the note and warrant of attorney on which a judgment was founded, were given within four months before proceedings in bankruptcy, being the agreed security for a loan made at the time. and it conclusively appeared that the creditor had no reasonable cause to believe the debtor to be insolvent, though he knew him to be so at the time of entering the judgment, the judgment is valid.

5. Where the debtors confided to one of their creditors the secret of their embarrassment and insolvency. for the purpose of protecting their surety, and better securing the collection of the debts by the prompt seizure of their property in execution. and the creditor in consequence of this information immediately issued execution: *Held*, to fall within the provisions of the 35th section of the bankrupt act, and that the assignee was entitled to the property, or to the value of it.

In bankruptcy.

M'KENNAN, Circuit Judge. On the 24th of February, 1868, the plaintiff was duly appointed assignee of L. C. & M. Berry, who were adjudged bankrupts by the district court for the Western district of Pennsylvania, on the petition of their creditors. He has filed his

1 [Reprinted from 4 N. B. R. 439 (Quarto, 146), by permission.]

bill in this court, praying that the defendant may be enjoined against proceeding upon certain judgments, held by him against the bankrupts, in Luzerne county, Pennsylvania, and that the property seized upon execution issued thereon may be delivered up to him; and the case has been heard on the bill and answer. The bill alleges, that the defendant.is the owner of judgments entered upon warrants of attorney, to Nos. 61, April term, 1866; 301, January term. 1867; 302, April term, 1867, and 113, 173, and 174, January term, 1868; that he has caused executions to be issued thereon, and the stock in trade, as well as certain real estate of the bankrupts, to be seized and advertised for sale; that at the time said warrants were given, the notes accompanying them did not evidence the true amount of the indebtedness of the makers: that such indebtedness, if any existed, had been fully paid to the defendant; and that when said notes were executed, the defendant knew, or believed, or had some reason to know. or believe, or expect, that the said L. C. & M. Berry were in embarrassed circumstances, and were about to become bankrupt. All these obligations affecting the integrity of the defendant's judgments, are denied by the answer; and, as the plaintiff has not contested such denial, by any replication, its truth is to be taken as admitted, and the denied allegations as entirely unsustained. These judgments are to be treated, then, as free from the vice of inadequate or dishonest consideration, and as not subject to impeachment for any of the reasons above stated. The bill further alleges, that judgments in Nos. 113, 173, and 174, January Term, 1868, "were given when they, the said L. C. & M. Berry, were insolvent, or contemplated insolvency, and that the intent was to give a preference, or to defeat or delay the operation of the bankrupt law, of which the said D. N. Lathrop had full knowledge."

The object of the bankrupt act is to prevent all preferences by insolvent debtors, and to secure an equal distribution of their property among their creditors. By the 35th section of the act, it is enacted, that a preference by an insolvent debtor, in any of the modes enumerated, within four months after the filing of a petition by or against him, to any creditor having reasonable cause to believe such debtor to be insolvent, shall be void, and property acquired by means of such preference, or the value of it, may be recovered by the assignee in bankruptcy from the person receiving it, or to be benefited by it. Under this section, it has been repeatedly adjudged, that these elements must co-exist in the transaction from which a preference results, viz.: an intention to give a preference, the insolvency of the debtor at the time, that the creditor had reasonable cause to believe that such insolvency existed, and that such preference was given in fraud of the provisions of the bankrupt act. The confession of a judgment for a pre-existing debt, when the defendant is insolvent and

the plaintiff has reasonable cause to believe it, is in the prohibited category, because, as a preference necessarily results from such confession, it is conclusively presumed that both parties intended such advantage to the creditor, and, therefore, to defeat the operation and effect of the act. A security, however, given for a consideration passing at the time, is not subject to such presumption, and is not, prima facie, invalid. Certainly, a judgment entered more than four months before proceedings in bankruptcy, on an attorney's warrant, executed concurrently with a loan of the sum represented by it,. is free from all taint of illegality. On the 17th of December, 1867, proceedings were commenced against L. C. & M. Berry, under the involuntary provisions of the bankrupt law. On the 23d of November previous, the respondent was informed by one of them that they were insolvent, and thereupon obtained from them the confession of judgment. No. 113, January term. 1868, for four thousand four hundred and sixty-six dollars and eleven cents. This sum is the aggregate of the judgments·and judgment notes above stated, and was taken to protect the security therein, to save costs, and better to secure the collection of said judgments, but with the distinct agreement that it was a mere auxiliary security. Under these circumstances the respondent very properly, on the 10th December, 1867, executed a full release of the judgment, which was afterwards entered on record. As by his own act, therefore, it has been annulled. it is unnecessary to deal further with it in this case. On the 26th December, 1867. the respondent procured from the Berrys a judgment note, in his own name, for six hundred and twenty-five dollars and thirty-seven cents, dated October 21, 1867, and entered it to No. 173, January term. 1868. This was really for a debt due to Geo. W. Brainerd & Co., which was in the charge of the respondent, as their attorney, for collection, and was so taken at their special instance and request. At the time the respondent had information of the insolvency of the debtors. and there was a clear intention to give the debt a preference within the meaning of the bankrupt law. That the fact of insolvency was not directly known to the real creditors, will not rescue the transaction from the operation of the law. Such knowledge is imputable to them, because it had been communicated to their constituted representative, who stood. in all the legal relations of the transaction, precisely in their stead. This judgment, must, therefore, be held to be invalid.

Judgment No. 174, January term, 1868, stands upon a different footing. Although the note and warrant of attorney, on which it was founded, were given within four months before the proceedings in bankruptcy, they were the agreed security for a loan made at the time, and it conclusively appears that the respondent then had no reasonable cause to believe the defendants to be insolvent; this knowledge was first obtained on the 23d of November following. True it is, that the judgment was not entered on record until the 30th of November, when the respondent knew that his debtors were insolvent, and that there is some conflict of opinion among the judges of the district courts as to the validity of a judgment entered under such circumstances. Can it be predicated of this state of facts that the warrant of attorney was executed with a view to give a forbidden preference, or that the creditor had reasonable cause to believe it to be in "fraud of the provisions of the bankrupt law?" I think clearly not; and I am unconvinced by any argument, that it is a sound construction of the bankrupt act to hold that a security free from any infirmity when it was made, was "given" in fraud of its provisions, or to defeat or delay its operation, because a subsequent exigency may have prompted the creditor to avail himself of the means of saving his debt, which the law authorizes him to stipulate for as an essential part of his contract. I would hesitate long to adopt such a construction when it would be followed by the anomalous consequence of a forfeiture of his security, by a creditor who was without fault. I cannot, therefore, adjudge this judgment to be void.

All the other enumerated judgments were confessed and entered, either before the bankrupt act, or before June 1, 1867, when it went into complete effect. Their validity has not been successfully sustained.

It was urged in argument, however. that the confession of judgment No. 112. January term, 1868, embodying the amount of these judgments as it did, under the circumstances stated in the answer, implants in them the fatal effects of that judgment. The argument is not sound, for the reason that the 35th section of the bankrupt law abrogates only the instrumentality by which a preference is sought to be obtained, and all interest or advantage acquired by its use. As soon as the respondent's attention was called to the questionable validity of that judgment, he promptly recalled the execution issued upon it, and before the filing of this bill, he annulled it by a release of record. Certainly he derived no advantage from it, and as it was merely an auxiliary security, he has himself dealt with it as exhaustively as this court could do. As before stated, these judgments, when they were taken, were free from any inherent element of illegality. They were entered of record, and the real estate of the defendants thereby became bound as a security for the payment. Entrenched in the laws of the state, these liens held the strongest position, and are entitled to like protection with every essential constituent of the contract out of which they sprung; they are expressly respected by the bankrupt act. Is it then a rightful, or intended, construction of the 35th section of the act to hold, that it declares to be absolutely void a judgment unimpeachable on any ground when it was "given," thereby working a dissolution of its lien, because of a subsequent abandoned and fruitless arrangement to facilitate its collection? In my apprehen-

sion such a construction is unwarranted either by the terms of the section or the spirit and object of this law. So far, then, as the lien of the judgments upon real estate is involved, they must be treated as valid.

Another question remains, which, although it is not raised by any direct allegation in the bill, may perhaps be regarded as presented with sufficient distinctness in the bill and answer to call upon the court to consider it. It involves the right of the respondent to hold a lien on the personal property seized under the executions issued on his judgments. By the 39th section of the bankrupt act, where any person, being bankrupt or insolvent, procures or suffers his property to be taken on legal process, with intent to give a preference to his creditor, or with intent to defeat or delay the operation of the act, and shall be adjudged a bankrupt, his assignee may recover back the property so taken, if the person receiving it had reasonable cause to believe that a fraud on the act was intended, or that the debtor was insolvent. Passive acquiescence in the seizure of his property in execution by an insolvent debtor, when he could prevent it by going into voluntary bankruptcy, has been held to be suffering it to be taken with intent to give a preference, within the meaning of this section. In re Black [Case No. 1,457]; In re Craft [Id. 3,316]; In re Sutherland [Id. 13,-638]. But the facts here import more than inactive submission, if they do not amount to positive procurement on the part of the debtors. They confided to the respondent the secret of their embarrassments and insolvency, and thereupon gave him a judgment for the amount of other judgment indebtedness to him —several installments of which were not then payable—for the very purpose of protecting their surety and better securing the collection of the debts, by a prompt seizure of their property in execution. While this plan was abandoned by the respondent, upon his conceiving doubts of its efficiency, he immediately issued executions upon some of his other judgments, and caused them to be levied upon the personal property of the defendants. Is there any room for doubt, then, that the debtors were moved by an intent to prefer the respondent's debt, and that the respondent was prompted by the debtor's information to seek a preference by an exclusive appropriation of their personal property to his judgments? Such is the clear significance of all the circumstances. But, as the assignee might recover back the property seized, if it had been sold, the respondent cannot maintain the advantage thus apparently gained, and the property or its equivalent must go to the assignee.

Decree: This cause came on to be heard upon the bill and answer, and was argued by counsel; and thereupon, in consideration thereof, it is ordered, adjudged, and decreed as follows, viz.: that the judgment entered to No. 173 of January term, 1868, in the common pleas of Luzerne county, Penn., in the name of D. N. Lathrop, but for the benefit of George W.

Brainerd & Co., against Leman C. Berry and Marion Berry, is void under the 35th section of an act of congress, entitled "An act to establish an uniform system of bankruptcy throughout the United States;" and that a perpetual injunction be granted to restrain the legal and equitable owners thereof, their agents or attorneys, from enforcing the same by execution; that judgments in the same court, entered to Nos. 61, of April term, 1866; 301, of January term, 1867; 302, of April term, 1867; and 174, January term, 1868, are not void, by reason of any of the matters in the complainant's bill of complaint alleged against them; and that the fund in the custody of the complainant, produced by the sale of the property of said L. C. & M. Berry, under the interlocutory order of this court, so far as the same accrued from the sale of real estate, be applied by said complainant, first, to the payment of the expenses of said sale of real estate and the costs of this suit, and second, to the judgments last above stated, in the order of their priority; and that the remainder of said fund, arising from the sale of personal property, be retained by said complainant, as assets in bankruptcy of said Leman C. and Marion Berry; and that either party may apply to this court hereafter, if necessary, touching the proper enforcement of this decree.

[In Hood v. Karper, Case No. 6,664, opinion by Cadwalader, J.: "We concur in opinion with the judge of the Northern district of Illinois, that the preference by means of a judgment note; is obtained not when the note with a warrant of attorney to confess judgment is executed and delivered, but when it is executed by the entry of the judgment. Golson v. Niehoff, Id. 5,524. The act of confessing the judgment is the debtor's act."] [2]

[See In re Campbell, Case No. 2,349, and Buchanan v. Smith, 16 Wall. (83 U. S.) 277.]